**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| K.G., a minor, by and through his parents and next friends, SUZANNE GOSCH and KEVIN GOSCH,<br><br>        Plaintiffs,<br><br>vs.<br><br>SERGEANT BLUFF-LUTON COMMUNITY SCHOOL DISTRICT, MIRANDA RIEDIGER, KELLY ADAMS, and DOES 1-30,<br><br>        Defendants. | No. C 15-4242-MWB<br><br><br>**OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE**<br><br>*Filed Under Seal* |

———————————————

**TABLE OF CONTENTS**

**I. GENERALLY APPLICABLE STANDARDS** ......................................... 2

**II. LEGAL ANALYSIS** ................................................................. 5
    **A. The Gosches' Motion In Limine** ....................................... 5
        **1. "Boilerplate" challenges** ..................................... 6
        **2. Remaining challenges** ........................................ 7
            **a. The county attorney's refusal to file charges** ................ 7
            **b. IDOE findings and materials** ................................... 8
            **c. Communications from Dr. Bunch regarding PTSD** .............................................................. 14
            **d. Kevin Gosch's accidental dislocation of KG's shoulder** .......................................................... 16
            **e. Drug use by KG's natural parents** ........................... 17
            **f. The opinions of Dr. Chesen** ................................... 18
                **i. Applicable standards** .................................... 19
                **ii. Application of the standards** .......................... 22
    **B. The Defendants' Motion In Limine** ................................... 23
        **1. Matters not properly at issue** ......................... 24
        **2. Remaining challenges** ................................... 24

        *a.*     *Challenges to experts* ............................................ 24
            *i.*     *Dr. Huckabee* ........................................... 24
            *ii.*    *Dr. Jung* ................................................ 27
            *iii.*   *Dr. Canter* ............................................. 28
        *b.*     *Inflammatory rhetoric* ......................................... 28
        *c.*     *Community safety/community standards* .................... 29
        *d.*     *Educational standards and related damage claims* ............................................................. 30
**III.**    **CONCLUSION** ............................................................... 32

This litigation arises from an incident in which a special education teacher allegedly "dragged" a seven-year-old autistic child across a classroom floor causing him serious carpet burns. This case is proceeding to a jury trial, beginning October 4, 2017, on the plaintiffs' claim pursuant to 42 U.S.C. § 1983 of violations of the Fourth Amendment (unreasonable seizure); claims of disability discrimination pursuant to Title II of the ADA and § 504 of the Rehabilitation Act; and a common-law claim of battery. In anticipation of trial, the parties have filed motions in limine challenging numerous categories of evidence.

## I.    *GENERALLY APPLICABLE STANDARDS*

The majority of the parties' challenges to specific evidence are based on—or can be resolved on the basis of—the balance of the probative value of that evidence against

its potential for unfair prejudice.  Consequently, I will summarize, here, relevance and prejudice standards for admissibility.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.  Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. CIV. P. 403.  The Eighth Circuit Court of Appeals "give[s] great deference to the district court's Rule 403 determinations." *United States v. Battle*, 774 F.3d 504, 514 (8th Cir. 2014); *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion."); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion." (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006))).

More specifically, as to Rule 403, the Eighth Circuit Court of Appeals has explained,

> [U]nder Rule 403, the [challenged evidence's] probative value must be substantially outweighed by unfair prejudice. "Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.  Whether there was unfair prejudice depends on whether there was an undue tendency to suggest

3

> decision on an improper basis." *United States v. Farrington*,
> 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*Muhlenbruch*, 634 F.3d at 1001 (emphasis in the original); *Myers*, 503 F.3d at 681 ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30 (1983)). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. CIV. P. 403, Advisory Committee Notes; *see also United States v. Bell*, 761 F.3d 900, 912 (8th Cir. 2014). Unfairly prejudicial evidence, inviting a decision on an improper basis, includes evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)); *accord United States v. Young*, 753 F.3d 757, 768-69 (8th Cir. 2014) ("[T]he district court violated Federal Rule of Evidence 403 because the testimony was so inflammatory that its resulting unfair prejudice outweighed its probative value.").

When evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of that evidence may mitigate the potential prejudice from such evidence and allow it to be admitted. *See, e.g, Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 982 (8th Cir. 2014) ("To the extent [the parties] were concerned about improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. CIV. P. 105)); *United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644

F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* Fed. R. Civ. P. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). The court has also recognized that limiting the amount of evidence, while excluding evidence that might prejudicially divert the jury's attention from the issues in the case, may also mitigate any potential for unfair prejudice. *See United States v. Lemon*, 239 F.3d 968, 972 (8th Cir. 2001) (holding that, where the district court admitted a limited amount of gang-related evidence that was relevant to the defendant's "mere presence" defense, but excluded evidence of his drive-by shooting conviction, which might have prejudicially diverted the jury's attention from the constructive possession issues central to the case, the district court had not abused its discretion in admitting the limited gang-related evidence).

With these evidentiary standards and the elements of the plaintiffs' claims in mind, I turn to consideration of the specific evidence challenged in the parties' motions in limine.

## II.    LEGAL ANALYSIS

### A.    The Gosches' Motion In Limine

In their June 23, 2017, Motion In Limine, the Gosches seek exclusion of ten categories of evidence:  (1) "Any reference to any settlement demand or settlement discussions of any nature, the content thereof, amount demanded or offered or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof"; (2) "Reference to the fact that a motion in limine

was filed"; (3) any request that the Gosches' counsel "stipulate to the admissibility of any evidence or to any facts in the presence and hearing of the jury"; (4) "Any reference to or testimony from any persons to be called as a witness on the behalf of Defendants, including expert witnesses, if not previously identified and fully disclosed as required by the Federal Rules of Civil Procedure"; (5) "Any evidence relating to the refusal of the County Attorney to file criminal charges"; (6) "Any evidence relating to the Iowa Department of Education's findings and materials submitted to the Department in support of Defendants"; (7) "Any evidence relating to communications between K.G.'s parents and Dr. Bunch regarding K.G.'s diagnosis of Post-Traumatic Stress Disorder"; (8) "Any evidence relating to Kevin Gosch's accidental dislocation of K.G.'s shoulder"; (9) "Any evidence relating to drug use by K.G.'s natural parents"; and (10) "Any evidence regarding the expert opinions of Dr. Eli Chesen."

### 1.    "Boilerplate" challenges

The Gosches' challenges to categories (1) through (4) are little more than "boilerplate" challenges that identify little or no case-specific evidence and simply reiterate general exclusions under the Federal Rules of Evidence, the Trial Management Order, or well-settled case law. Indeed, the defendants offer no objection to any of these categories, although they do assert, as a caveat to the exclusion of category (4), that they have no objection, "unless the proposed testimony is in response to undisclosed testimony from Plaintiff's witnesses." In short, no motion in limine concerning these categories of evidence would have been necessary, at all; if there was any doubt, a motion in limine concerning these categories could have been avoided if the plaintiffs had attempted even a brief consultation with opposing counsel.

I have indicated my annoyance with "boilerplate" discovery responses, more than once, explaining that such responses obstruct the discovery process, violate numerous rules of civil procedure and ethics, impose costs on litigants that frustrate the timely and

just resolution of cases, and, indeed, are tantamount to no response at all, which may constitute a waiver. *See Liguria Foods, Inc. v. Griffith Labs., Inc.*, ___ F.R.D. ___, 2017 WL 976626 (N.D. Iowa March 13, 2017); *St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000). Apparently, I must now add "boilerplate" motions in limine to the list of attorney conduct that needlessly increases the costs of litigation and impedes, rather than forwards, the timely, just, and inexpensive resolution of cases, because they are tantamount to no motion at all, or simply require the opposing party to respond and the court to rule on issues that are a foregone conclusion, thus wasting the opposing parties' and the court's time.

The parts of the Gosches' Motion In Limine seeking exclusion of categories (1) through (4) are granted as unresisted, with the obvious caveat that the defendants may respond to previously undisclosed testimony by the Gosches' witnesses with undisclosed testimony of their own witnesses.

### 2. Remaining challenges

#### a. The county attorney's refusal to file charges

The Gosches' initial statement of the evidence that they challenge in category (5) does not make clear against whom criminal charges were not filed, but presumably this category consists of evidence of the county attorney's decision not to file criminal assault charges *against Ms. Riediger* in connection with the incident giving rise to the Gosches' claims. The Gosches also expressly state that this category includes evidence concerning the county attorney's investigation of the incident. They contend that this evidence is irrelevant and, if somehow relevant, that it is more prejudicial than probative. The defendants have no objection to exclusion of this evidence, "so long as Plaintiff offers no evidence that his parents sought to have Miranda Riediger prosecuted for assault."

This is another example of the failure of the Gosches' counsel to avoid the necessity of challenging this evidence, and avoid wasting the court's time, by a brief

consultation with opposing counsel.  It should go without saying that, if the Gosches offer evidence that they sought to have Ms. Riediger prosecuted for assault, it would open the door to evidence that the county attorney did not file criminal assault charges against her, notwithstanding any general pre-trial exclusion of such evidence.  This challenge is as much a waste of the court's time as a "boilerplate" motion in limine.

Nevertheless, the part of the Gosches' Motion In Limine seeking exclusion of category (5) is granted, with the obvious caveat that, if the Gosches offer evidence that they sought to have Ms. Riediger prosecuted for assault, they will open the door to such evidence being offered by the defendants in response.

### b.     IDOE findings and materials

The evidence that the Gosches challenge in category (6) is clarified in their brief as the following: "(1) all documentation relating to the Department of Education's 'State Complaint 14-04 Decision' dated July 7, 2014, and (2): all documentation submitted to the Department of Education on Defendant Riediger's behalf, including the letter dated March 4, 2014 from Superintendent Rod Earleywine."  What isn't entirely clear is what the Gosches mean by "documentation."  For example, do they mean proof that the claim was filed, any and all documents filed in the administrative case, or proof of the disposition of the claim?  Whatever they mean, they contend that the factual and legal bases for the claims in the IDOE's proceedings and in this case are different, so that any information from the administrative proceedings is irrelevant, and/or is hearsay, while any indication of the outcome of the admininstrative proceedings is more prejudicial than probative, because the jurors must be allowed to make their own decisions on the facts and law before them.

The defendants counter that this evidence (whatever it is) is relevant, because, if nothing else, the *facts* in the two proceedings are the same, but if there are factual differences, or the documents are inaccurate, the Gosches can demonstrate as much.

More specifically, the defendants argue that this evidence shows that the Gosches have attempted to control and manipulate the narrative of what happened at every stage since the incident, including during the investigation, medical treatment, administrative proceedings, and now in court. Similarly, the defendants argue that the IDOE documents are "revealing," because the Gosches now contend that this case is not about a Free Appropriate Public Education (FAPE), but that was the basis of their administrative claim. The defendants also assert that the Gosches' contentions that KG's Behavior Intervention Plan (BIP) and Individualized Education Plan (IEP) are controlling, and that Ms. Riediger's failure to follow them is proof of their current claims, are mistaken, because the administrative decision makes clear that the BIP and IEP are simply guidelines. The defendants also point out that all parties were represented by counsel in the IDOE proceedings, so that there is nothing inherently untrustworthy about those proceedings or their outcome. The defendants contend that the court will address the proper legal standards for this case in its instructions, but what they are trying to prevent is the Gosches' experts creating false impressions about the standards of care defined by the relevant administrative rules. Finally, they assert that evidence and testimony from supervisors, peers, and others will assist the jurors in determining whether or not Ms. Riediger is truthful in her description of what happened in the classroom.

In a First Amendment retaliation case, I considered the admissibility of evidence from administrative proceedings in which the plaintiff sought unemployment compensation. *Minten v. Weber*, No. C11–4004–MWB, 2012 WL 7861462 (N.D. Iowa Jan. 26, 2012). I recognized,

> [I]n the context of employment discrimination cases, the question of whether to admit or exclude evidence of administrative findings, investigations, action, or inaction, is within the sound discretion of the court. *See BoDeans Cone Co., L.L.C. v. Norse Dairy Sys., L.L.C.*, 678 F.Supp.2d 883,

897 (N.D.Iowa 2009) (citing *Phan v. Trinity Regional Hosp.*, 3 F.Supp.2d 1014, 1017 (N.D.Iowa 1987)). "More specifically, the court must ensure that unfair prejudice does not result from a conclusion based on a cursory [administrative] review of the very facts examined in depth at trial." *Id.* (internal quotation marks and citations omitted). I observed that "the same concern with unfair prejudice from admitting evidence about action or inaction of a state or federal enforcement agency, based on the agency's cursory investigation or review of facts examined in depth at a civil trial, is likely to arise in a case involving alleged antitrust violations." *Id.* I added that, "[b]efore undertaking such a 'prejudice' analysis, pursuant to Rule 403, however, the court … should also consider the probative value of the evidence in question." *Id.* (citing Fed.R.Evid. 401 & 402). I find that the same concerns are presented here, even though the administrative proceedings at issue here involved neither employment discrimination nor violation of antitrust regulations, but unemployment compensation.

*Minten v. Weber*, No. C11–4004–MWB, 2012 WL 7861462, *6 (N.D. Iowa Jan. 26, 2012) (First Amendment retaliation case).

I also recognized,

[T]the probative value, if any, of evidence of the outcome, findings, or conclusions of the administrative proceedings . . . is substantially outweighed by its potential for prejudice and confusion and the possibility (or probability) that introduction of that evidence will allow trial . . . to devolve into a 'mini-trial' on the issues in and the reliability of the findings and conclusions in the administrative proceedings.

*Minten*, 2012 WL 7861462 at *7. Furthermore,

[A]dmission of the administrative conclusions may improperly lead the jurors to believe that determinations . . . have already been made, and that they need not make an

> independent determination based on the evidence relating to
> [issues] presented to them.

*Minten*, 2012 WL 7861462 at *7. On the other hand, I also recognized that a party's *admissions made in administrative proceedings* may be admissible in a subsequent jury trial, but should only be identified as statements "in other proceedings." *Id.*

I believe that the same concerns are at issue where the question is the admissibility of a prior agency determination on the distinct issue of compliance with a disabled child's rights under the IDEA in a subsequent jury trial in which the claims are for constitutional violations, violations of *other* statutes, and a tort. *Cf. id.* at *6. I conclude that a balance of probative value against the potential for unfair prejudice, pursuant to Rule 403, weighs in favor of excluding any decision or determination by the IDOE concerning the Gosches' administrative claim. While it does not appear that the IDOE's investigation was "cursory," admission of any determinations or conclusions of the agency could lead to a "mini-trial" on the issues in and the reliability of the agency's proceedings, as well as improperly lead the jurors simply to believe that the IDOE has made the necessary determinations without making an independent determination based on the evidence presented and the law as defined for them in this case. *Cf. id.* at *6-*7.

Furthermore, the defendants persist in arguing that this case is somehow about a Free Appropriate Education (FAPE) under the IDEA, but I have already ruled, at summary judgment, that the "gravamen" of the wrongfulness of Ms. Riediger's conduct in the Complaint's general factual allegations is not that it violated the IDEA, but that it involved unlawful and unreasonable use of physical force against KG. I concluded that the allegation that the use of force was contrary to the IEP and BIP was made as an indication of the *unreasonableness* of the use of force, not as the *gravamen* of the wrongfulness of the conduct. Moreover, I concluded that violation of the IEP and BIP are not the central allegations of wrongfulness of the conduct in any of the six claims for

relief in the Complaint.  *See K.G. by and through Gosch v. Sergeant Bluff-Luton Comm. Sch. Dist.*, ___ F. Supp. 3d ___, ___, 2017 WL 1098829, *11-*13 (N.D. Iowa March 23, 2017).

Nor is it appropriate for the defendants to attempt to impeach the legitimacy of the Gosches' current claims by suggesting that they are pursuing them only because they were unsuccessful in administrative proceedings or to suggest that the current claims are really about denial of a FAPE.  As I explained in the summary judgment ruling,

> Indeed, the only suggestion, here, that this case has anything at all to do with the IDEA is that, in the history of the proceedings, the Gosches initially chose to pursue the administrative process under the IDEA, and did allege violation of KG's IEP and BIP, but then abandoned those proceedings.  [*Fry v. Napoleon Community Schools*, --- U.S. ---, ----. 137 S.Ct. 743, 749 (Feb. 22, 2017)].  There is nothing strange about parents of a child who has an IEP in place to protect his or her right to a FAPE turning, first, to administrative proceedings to secure a FAPE or otherwise to address wrongdoing of a special education provider, as both a familiar and readily-available forum that might provide them with the most immediate relief.  As the majority and concurring justices in *Fry* all suggested, there is nothing unusual about parents of a child with an IEP initially asserting an administrative claim under the IDEA, only later to discover, when they have had the opportunity to consult with counsel, that either the IDEA does not provide the appropriate relief or that their claim is not about a violation of the IDEA at all.  Thus, with the *Fry* majority's caution to consider the facts to determine whether abandonment of the administrative proceedings was strategic or because of a realization that the grievance had to do with something other than a FAPE, *see id.*, and the concurring justices' caution that other federal laws provide relief that the IDEA could not, *Fry*, --- U.S. at ----, 137 S.Ct. at 757 (Alito, J., concurring), I do not find

that the Gosches' decision to pursue claims under other laws and procedures was merely strategic. Rather, in light of their allegations, they are now pursuing claims that address the "gravamen" of the wrongful conduct at issue and the appropriate relief. This is not simply a case in which the Gosches seek remedies that are not available under the IDEA, in which case exhaustion would still be required, *see J.M. [v. Francis Howell Sch. Dist.*, No. 16-1756,] 850 F.3d [944,] at ___, 2017 WL 894460 at *4 [(8th Cir. March 7, 2017)], but one in which the wrongs and the remedies are both beyond the scope of the denial of a FAPE under the IDEA.

*K.G.*, ___ F. Supp. 3d at ___, 2017 WL 1098829 at *13. Evidence of the administrative proceedings, including the Gosches' claims and the defendants' defenses and the decision in those proceedings, is far more prejudicial than probative, because it improperly impugns the Gosches' motives for bringing their claims, and potentially would mislead and confuse the jurors about what claims are at issue, while providing little or nothing of probative value about the claims that are properly at issue. *See* FED. R. EVID. 403.

On the other hand, documents filed in the administrative record, *for which authenticity and admissibility can be otherwise established*, are not necessarily excludable, simply because they were submitted in the administrative proceedings. Any potential prejudice from an apparent imprimatur of authority or reliability that might arise from the fact that such documents are drawn from administrative proceedings, or were found in administrative files, or were made for purposes of administrative proceedings, can be eliminated by identifying the administrative proceedings simply as "other proceedings." *Cf. Minten*, 2012 WL 7861462 at *7. Conversely, the mere fact that the documents were submitted in adversarial administrative proceedings is absolutely no guarantee of their trustworthiness or admissibility in these proceedings. For example, Rule 608 of the Federal Rules of Evidence controls the admissibility of evidence of a witness's character for truthfulness, but opinions regarding Ms. Riediger's character for

truthfulness that are drawn from the administrative record must be in otherwise admissible form.

In short, that part of the Gosches' Motion In Limine seeking exclusion of evidence in category (6) is granted to the extent that documents from the administrative proceedings indicating the contentions of the parties and any decision or determinations of the IDOE in the administrative proceedings are excluded, but documents from the administrative record, *for which authenticity and admissibility can be otherwise established*, are admissible.

### c.     *Communications from Dr. Bunch regarding PTSD*

Category (7) of evidence that the Gosches seek to exclude is "[a]ny evidence relating to communications between K.G.'s parents and Dr. Bunch regarding K.G.'s diagnosis of Post-Traumatic Stress Disorder [(PTSD)]." In their supporting brief, the Gosches argue that the defendants may try to introduce at trial two email communications between Dr. Bonnie Bunch and KG's parents, dated April 28, 2014, and May 1, 2014. In the earlier email, Dr. Bunch forwarded to KG's parents the text of a proposed letter from her office to KG's school. In the later email, Dr. Bunch forwarded the "final version" of the letter, in which she had added that "[o]ne way to view [KG's] reaction to the alleged events is as a form of post-traumatic stress disorder." The Gosches argue that the defendants have not identified any evidence suggesting that the Gosches sought or encouraged this addition, but they anticipate that the defendants will attempt to give the jurors that impression.

The Gosches argue that this evidence should be excluded pursuant to Rules 401 and 403, because Dr. Bunch will not testify as an expert at trial regarding a diagnosis of PTSD. In these circumstances, the Gosches argue, the only plausible relevance of the emails is to attempt to undermine their credibility and Dr. Bunch's credibility on matters on which they will not testify. The defendants argue that this evidence should be

admitted, however. They argue that the source of any diagnosis of KG with PTSD, for which the Gosches claim substantial damages, is not clear. They argue that Suzanne Gosch, KG's mother, is a nurse who has been actively involved in KG's medical care. They contend that, where the Gosches were invited to "look at" the draft letter, then language was added suggesting that KG has PTSD, this sequence of events is certainly relevant to where any diagnosis of PTSD came from.

Even if Dr. Bunch will not testify to a diagnosis of PTSD, the defendants should still be able to impeach her with evidence that she changed her professional statements in her letter to the school at the request of KG's parents, if that is what happened. Thus, although the defendants will not be allowed to make an initial submission of the emails and the drafts of the letter *in front of the jury*, the defendants will be permitted to question Dr. Bunch about the emails and drafts of the letter *outside the presence of the jury*, and may specifically ask her whether or not the parents or a parent requested the addition to her letter of a description of KG's reaction to the incident as like "a form of post-traumatic stress disorder." If she answers yes, then the defendants will be allowed to impeach Dr. Bunch, in front of the jury, about changing her professional statements in the letter at the behest of the parents or a parent with the emails and drafts of the letter. This is so, even if the final version of Dr. Bunch's letter is not a formal "diagnosis" of PTSD. Also, if there is no *medical evidence or expert opinion* that KG suffers from PTSD as a result of the incident in question, no claim for damages for PTSD will be submitted to the jury.

Thus, the part of the Gosches' Motion In Limine seeking exclusion of category (7) is denied, but any reference to the emails and the drafts of Dr. Bunch's letter to the school will be addressed with the procedure described above.

#### d.    *Kevin Gosch's accidental dislocation of KG's shoulder*

Category (8) of evidence challenged by the Gosches is "[a]ny evidence relating to Kevin Gosch's accidental dislocation of K.G.'s shoulder." The Gosches explain that, at his deposition, Kevin Gosch, KG's father, testified that he had dislocated KG's *elbow*, when KG was smaller, by picking him up by his wrists. They assert that they are "concerned" that the defendants may seek to introduce evidence of this incident at trial and claim, incorrectly, that Kevin Gosch admitted to dislocating KG's *shoulder*. They contend that this evidence of a prior injury should be excluded, because there is no proven connection between the prior injury and the injury at issue in this lawsuit. The Gosches argue that, even if somehow relevant, this evidence is more prejudicial than probative, because it is potentially inflammatory.

There appears to be a disagreement, at the outset, about what evidence is at issue. The defendants argue that there is evidence that, on the day of the incident, when Kevin Gosch came to pick up KG at the school, Ms. Riediger and Ms. Adams told him what happened, and they will testify that he said, "Don't worry about it; I dislocated his shoulder once when he did that at home." The defendants admit that Kevin Gosch now denies making that statement. Nevertheless, the defendants argue that, if the jurors choose to believe Ms. Riediger and Ms. Adams about Kevin Gosch making this statement, it will legitimately impeach the parents' current claims about the seriousness of the incident and is probative of whether Ms. Riediger reacted any differently than the parents had to a similar incident. The defendants do not make any reference to the incident that the Gosches contend Kevin Gosch described in his deposition.

Even though the parties have identified evidence concerning different incidents in which Kevin Gosch admitted accidentally injuring KG, I conclude that evidence of neither incident is admissible. In my view, neither incident is relevant to the issues properly presented in this case, because neither involves injury in the course of discipline for

misbehavior in a school setting by a teacher, but injury by a parent. FED. R. EVID. 401. Even assuming that either incident had some marginal probative value, both are unfairly prejudicial, because of the potential to inflame the jurors and invite them to find against the Gosches on the ground that Kevin Gosch injured KG or is a "violent" parent, as well as the potential for confusion of the issues and causing the trial to devolve into a mini-trial over the various incidents. FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001; *Adams*, 401 F.3d at 900.

The part of the Gosches' Motion In Limine seeking exclusion of category (8), both as described by the Gosches and as described by the defendants, is granted.

### e.   Drug use by KG's natural parents

Category (9) of evidence that the Gosches seek to exclude is "[a]ny evidence relating to drug use by K.G.'s natural parents." The Gosches contend that this evidence is not probative, is prejudicial and inflammatory, and will likely confuse and mislead the jurors. The defendants argue that KG's birth mother was apparently a methamphetamine user and it is believed that KG suffers from autism as a result. The defendants argue, however, that a ruling on the evidence of KG's birth mother's use of drugs is premature, because they do not know whether evidence concerning this fact will be relevant at trial to explain KG's behavior during the incident.

I agree that this evidence is not probative, because what caused KG's autism or his conduct at the time of the incident is not relevant; what is relevant is the reasonableness of the defendants' response to his conduct. FED. R. EVID. 401. Moreover, such evidence is potentially prejudicial, but most certainly has so little relevance that its relevance is outweighed by the potential waste of time it would involve. FED. R. EVID. 403.

The part of the Gosches' Motion In Limine seeking exclusion of category (9) is granted.

### *f.* *The opinions of Dr. Chesen*

The last category of evidence that the Gosches seek to exclude, category (10), is "[a]ny evidence regarding the expert opinions of Dr. Eli Chesen." The Gosches argue that Dr. Chesen, a psychiatrist who has been designated by the defendants as an expert on various topics, has based his report solely on his review of the reports of the Gosches' experts, Drs. Canter and Huckabee. In particular, the Gosches challenge Dr. Chesen's opinions that KG's injuries have "facti[t]ious origins," and, more specifically, that his diagnosis is "that of facti[t]ial dermatitis and malingering by proxy, with parental guidance and promotion for secondary gain." They also challenge Dr. Chesen's conclusion that KG does not suffer from PTSD, because they argue that he applied a standard appropriate for assessing healthy adults, not children with autism.

The Gosches argue that Dr. Chesen's opinion that KG's physical and psychological symptoms are the result of malingering is an improper subject for expert opinion. Moreover, the Gosches contend that Dr. Chesen's opinions improperly diagnose KG's *parents,* but he has no proper basis for doing so. The Gosches also argue that Dr. Chesen is not qualified to diagnose dermatitis, because his sole basis for rendering such an opinion was a year of residency in dermatology that ended over forty years ago, while his practice is now limited to psychiatry. They argue that their experts are better qualified and that Dr. Chesen's track record in other cases demonstrates his bias.

In contrast, the defendants argue that, while Dr. Chesen's report may not be clear on this point, he not only reviewed reports of the Goshes' experts, but also reviewed the report of the defendants' other expert, Dr. Douglas Martin, school records from before and after the incident in question, all of the medical records that the Gosches provided in discovery (except records of immunizations, dental appointments, and a tonsillectomy), photographs of the alleged injuries, and the emails and the draft and the final versions of

the letter by Dr. Bunch. The defendants argue that Dr. Chesen is qualified to offer the challenged opinions based on these sources. Among other things, they argue that Dr. Chesen is qualified by his review to opine on whether the Gosches' experts and medical providers based their opinions on first-hand observations or on information provided by Suzanne Gosch.

### i. Applicable standards

As the Supreme Court has explained, Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and requires the district court to serve as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). More specifically, Rule 702 of the Federal Rules of Evidence provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*;
> >
> > (b) the testimony is *based on sufficient facts or data*;
> >
> > (c) the testimony is the *product of reliable principles and methods*; and
> >
> > (d) the expert has *reliably applied the principles and methods* to the facts of the case.

FED. R. EVID. 702 (emphasis added).

The Eighth Circuit Court of Appeals has stated that the standard for what expert testimony is relevant and helpful under Rule 702 is "low," that is, that the expert's evidence should be admitted if it has any tendency to make a fact of consequence more or less probable. *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014) (citing

FED. R. EVID. 401).  Nevertheless, the court has reiterated that "'[w]here the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous.'"  *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (quoting *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) (per curiam)).  In short, to satisfy the relevance requirement of Rule 702 and *Daubert*, "'the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.'"  *Smith v. Bubak*, 643 F.3d 1137, 1138 (8th Cir. 2011) (quoting *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010)).  Thus, for example, expert testimony is relevant where such testimony is required to establish an element of a claim.  *See, e.g., Barrett*, 606 F.3d at 981 (concluding that a plaintiff in a toxic tort strict liability case is required to establish causation through expert testimony).

I recognize that, under *Daubert*, I have a duty to perform a "gatekeeper" function, under Rule 702 of the Federal Rules of Evidence, so that only expert testimony that is relevant and reliable is admitted.  509 U.S. at 589.  More specifically,

> The objective of the *Daubert* inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  [T]his is a flexible, case-specific inquiry.  "The trial court ha[s] to decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case."  *Id.* at 156, 119 S.Ct. 1167 (quotation omitted); *see* Fed. R. Evid. 702 and Advisory Committee Notes.

*American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722-23 (8th Cir. 2015).  I also recognize that this "gatekeeper" function under *Daubert* requires me to "make a 'preliminary assessment of whether the reasoning or methodology underlying the

testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (quoting *Daubert*, 509 U.S. at 592-93).

I must also take into account Rule 704 of the Federal Rules of Evidence, concerning the scope of expert opinions. As the Eighth Circuit Court of Appeals has explained,

> Rule 704(a) provides that expert evidence is not inadmissible because it embraces an ultimate issue to be decided by the jury. If the subject matter is within the jury's knowledge or experience, however, the expert testimony remains subject to exclusion "because the testimony does not then meet the helpfulness criterion of Rule 702." [*United States v.] Arenal*, 768 F.2d [263,] 269 [(8th Cir. 1985)]. Opinions that "merely tell the jury what result to reach" are not admissible. Fed.R.Evid. 704 advisory committee's note.

*Lee v. Andersen*, 616 F.3d 803, 808–09 (8th Cir. 2010); *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (noting that, although Rule 704(a) allows expert testimony that "embraces an ultimate issue to be decided by the trier of fact," it does not allow "[o]pinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach'" (quoting FED. R. EVID. 704, Advisory Committee Note)). Thus, to the extent that an expert lays a proper foundation by demonstrating an adequate basis for an opinion, even an opinion about an ultimate issue, then such an opinion may be admissible at trial. On the other hand, "'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.'" *American Auto. Ins. Co.*, 783 F.3d at 725 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Finally, the Eighth Circuit Court of Appeals has also observed that expert evidence, even if relevant, is subject to exclusion if its potential for prejudice substantially outweighs its probative value. *Holmes*, 751 F.3d at 851; *see also* FED. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by its potential for prejudice); *Coutentos*, 651 F.3d at 821 (considering whether the district court had properly excluded expert evidence under Rule 403, after affirming exclusion of the expert's evidence as irrelevant under Rule 702).

### ii.    *Application of the standards*

My "preliminary assessment" of Dr. Chesen's testimony, from my review of the submissions in support of and resistance to the Gosches' challenge to exclude this expert's opinions, is that some of his reasoning and methodology underlying the challenged opinions is not valid. *See Daubert*, 509 U.S. at 592-93 (first step in the court's "gatekeeper" function under Rule 702); *Kudabeck*, 338 F.3d at 860 (explaining that the "gatekeeper function" involves this "preliminary assessment"). First, I find that Dr. Chesen is *not* qualified to offer opinions on the causes, the nature, or the extent of dermatitis based on a one-year residency in dermatology over forty years ago. On the other hand, he may rely on the diagnoses *by qualified experts* of the cause, the nature, or the extent of dermatitis as the basis for psychiatric opinions. Second, not only is there not the slightest hint of a factual basis for Dr. Chesen's opinion about "malingering" to be found in his report, but the Eighth Circuit Court of Appeals has held that whether "secondary gain" and "malingering" influenced a person's story about injury are "not [] proper subject[s] for expert testimony under Fed.R.Evid 702." *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1996). I find that expert opinions about the "factitious" origins of injuries are, similarly, not proper subjects for expert testimony. *Cf. id.*

On the other hand, the Gosches' argument that Dr. Chesen applied the wrong standard for PTSD, one based on healthy adults, rather than an autistic child, is not a basis to exclude his testimony on that subject. Rather, it goes to the weight of any opinion he may have about whether KG suffers from PTSD. Excluding Dr. Chesen's opinions on PTSD from this case would "invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003). This is an example of when "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are not only "traditional," but "appropriate means of attacking shaky but admissible [expert] evidence." *Daubert*, 509 U.S. at 596; *Vesey*, 338 F.3d at 917. Dr. Chesen will not be allowed to testify about whether or not KG has PTSD, however, unless and until the Gosches offer evidence sufficient to raise a jury question about whether or not KG does suffer from PTSD as a result of the incident in question.

The part of the Gosches' Motion In Limine seeking exclusion of Dr. Chesen's opinions in category (10) is granted in part and denied in part, as set out above.

### B.       *The Defendants' Motion In Limine*

In their June 30, 2017, Motion In Limine, the defendants challenge thirteen categories of evidence. Those categories are described by the defendants as the following: (1) "Investigation of the Incident"; (2) "The Level I Report"; (3) "Administrative Leave"; (4) "Impact on the Parents"; (5) "Settlement/Offer to Confess"; (6) "Liability Insurance"; (7) "Helena Huckabee, Ph.D."; (8) "Dr. Jung"; (9) "Inflammatory Rhetoric"; (10) "Mandatory Reporters"; (11) "Dr. Jennifer Canter"; (12) "Community Safety/Community Standards"; and (13) "Evidence Of Educational Standards and Related Damage Claims."

### 1.    *Matters not properly at issue*

It should be clear, from the discussion, above, in Section II.A.1., that categories (5) and (6) are simply "boilerplate" challenges that waste the parties' and the courts' time and, in any event, could have been resolved by brief consultation of the parties' attorneys. Indeed, both the Gosches and the defendants moved to exclude evidence of settlement attempts. Those parts of the defendants' Motion In Limine are granted. Moreover, in their Response, the Gosches state that they do not resist exclusion of categories (1) through (6) and (10). Thus, it follows that the parties' and the court's time could have been saved, again, by a brief consultation of the parties' attorneys over the admissibility of evidence in those categories. Those parts of the defendants' Motion In Limine are also granted.

### 2.    *Remaining challenges*
#### a.    *Challenges to experts*

The defendants challenge opinions of three of the Gosches' experts, Drs. Huckabee, Jung, and Canter, as categories (7), (8), and (11) of their Motion In Limine, respectively. I have set out the standards applicable to these parts of the defendants' Motion In Limine, above, in Section II.A.2.f.i.

#### i.    *Dr. Huckabee*

The defendants contend that Dr. Huckabee, a neuropsychologist, improperly uses numerous inflammatory descriptions of incidents and injuries[1] and improperly describes

---

[1]More specifically, the defendants challenge Dr. Huckabee's references to KG being "held hostage at school until he finished his work"; "retention punishment"; "federal guidelines on the use of restraint and seclusion reject the use of seclusion as a means of gaining the student's compliance or as a form of punishment as Sergeant Bluff staff were doing"; "preventing [K.G.] from leaving at the end of the school day by surrounding him with staff represents seclusion" references to "abuse, abusive, heinous

(Footnote continued . . .

certain conduct as violations of state or federal law or as "illegal."[2]  The defendants contend that these statements do nothing more than tell the jurors what results to reach, in violation of Rule 704 of the Federal Rules of Evidence.

The Gosches contend that the defendants have only specifically objected to some of these statements.  Even so, they do not oppose the defendants' motion to the extent that it seeks to prevent Dr. Huckabee from directly stating that restraint and dragging of KG was "abusive" or "illegal."  On the other hand, they contend that Dr. Huckabee should not be precluded from testifying about circumstances and conduct from which jurors could infer that KG was a victim of abuse and the defendants' conduct violated the law.  Specifically, the Gosches contend that Dr. Huckabee should be allowed to testify as to her knowledge of the following:  "(1) what restraint and seclusion are, (2) the psychological and cognitive consequences of using restraint and seclusion as a form of punishment; (3) the adverse psychological and cognitive consequences of restraining and dragging a special needs child; (4) the psychological, cognitive, and physical harms she believes K.G. suffered as a result of being restrained and dragged across the floor; and (5) that the impact [of] being restrained and dragged across the floor is consistent with being abused."  They argue that such testimony is proper expert testimony to inform jurors of matters beyond their experience.

abuse, etc."; "drag him across the floor"; Ms. Riediger's actions "resulted in [K.G.] having five abrasive injuries with bruising to the skin on his back"; and "undignified and harmful . . . both physically and psychologically."

[2] More specifically, the defendants challenge Dr. Huckabee's statements about "US Federal Guidelines and Iowa State Laws on the use of Restraint and Seclusion"; that "if a parent were to treat their child in the manner that [Ms.] Riediger treated [K.G.], they would likely loose (sic) custody of their child"; a discussion of the requirements of Iowa law; characterization of the incident as "corporal punishment"; a statement that "[Ms.] Riediger's actions are in direct violation of Iowa state law"; and references to "illegal actions."

To the extent that Dr. Huckabee is able to demonstrate that terms—such as "restraint," "seclusion," "punishment," "retention punishment," and even "harmful" and "abuse"—have recognized clinical meanings, she may opine that certain conduct, as described in hypothetical form, fits the meanings of those terms. The use of such terms, if they have recognized clinical meanings, is probative and will assist jurors to understand unfamiliar matters beyond their experience. *See American Auto. Ins. Co.*, 783 F.3d at 723; *Coutentos*, 651 F.3d at 821. The use of such terms is not more prejudicial than probative, if it involves recognized clinical terms. *See Holmes*, 751 F.3d at 851 (proper expert testimony may still be excluded on Rule 403 grounds); *see also* FED. R. EVID. 403. If Dr. Huckabee is able to do so, to a reasonable degree of scientific certainty, she may even opine that KG was subjected to conduct fitting those clinical terms. What she cannot do is cast her supposedly expert opinions in inflammatory characterizations, such as "held hostage," "heinous," "undignified," or "illegal." FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001; *Adams*, 401 F.3d at 900. While the defendants dispute the description of what happened to KG as "dragging," there is adequate basis in the record for whether or not KG was "dragged" to be a jury question. It does not appear that Dr. Huckabee has the forensic qualifications to determine from physical evidence that KG was "dragged," but she may opine about what the neuropsychological consequences might be, if KG was "dragged." Pursuant to the Gosches' concession, and applicable law, *see, e.g., Peters v. Woodbury Cty., Iowa*, 979 F. Supp. 2d 901, 921-22 (N.D. Iowa 2013) (discussing the limits of expert testimony on legal matters), Dr. Huckabee may not directly state that restraint and dragging, or any other conduct to which KG was allegedly subjected, was "abusive" or "illegal."

The part of the defendants' Motion In Limine seeking to exclude certain opinions of Dr. Huckabee in category (7) is granted to the extent described above.

###### ii.    Dr. Jung

Similarly, category (8) of evidence that the defendants seek to exclude is any opinion by Dr. Jung that the incident with KG involved "excessive force," because that characterization is unfairly prejudicial, as well as any opinion that KG was dragged on a carpeted surface, until such time as there is a factual basis in the record to support that opinion. The Gosches do not oppose the defendants' motion to the extent that it seeks to prevent Dr. Jung from using the specific legal term "excessive force." On the other hand, they argue that he should be allowed to testify that KG's injuries "are consistent with inflicted forceful dragging and contact with the carpeted surface," and that KG's injuries "are significant and indicative of inflicted injuries beyond what is considered normal care and discipline of a 7 year-old-child." They point out that Dr. Jung is not speculating that KG was dragged on a carpeted surface, because the medical evidence is consistent with that having happened.

Again, pursuant to the Gosches' concession, and applicable law, *see, e.g., Peters*, 979 F. Supp. 2d at 921-22, Dr. Jung will not be allowed to opine that KG was subjected to "excessive force." Again, there is adequate basis in the record for whether or not KG was "dragged" to be a jury question. Thus, if Dr. Jung can do so to a reasonable degree of medical certainty, he will be permitted to testify that, in his opinion, KG's injuries "are consistent with forceful dragging and contact with the carpeted surface," that the injuries are "significant," and that they are "indicative of injuries beyond what is considered normal care and discipline of a 7-year-old child." However, in the absence of any evidence of a specialized clinical meaning, it appears to me that it is a jury question whether any injury or forceful treatment was "inflicted," and Dr. Jung may not use that inflammatory characterization. FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001; *Adams*, 401 F.3d at 900.

The part of the defendants' Motion In Limine seeking to exclude certain opinions of Dr. Jung in category (8) is granted in part and denied in part, as described above.

### iii.    Dr. Canter

Category (11) of the evidence that the defendants seek to exclude is the following opinions by Dr. Canter:  "These friction burns are consistent with the mechanism of having been actively dragged on the floor by the ankles"; "all parties involved concur that the mechanism of being dragged on the floor occurred"; "[t]here is no indication that [KG] was in a position of danger to himself or others at the time he was dragged on the floor"; and "[t]here was nothing in his IEP suggesting dragging on the floor would have been an appropriate de-escalation or protective measure."  The defendants argue that it would be unfairly prejudicial to them to allow Dr. Canter to offer such opinion testimony without first establishing a factual basis for the claim that KG was actually "drug [sic] across the floor" in the classroom.  The Gosches argue that there is sufficient factual basis in the record that KG was "dragged" to allow Dr. Canter's challenged opinions.

I agree with the Gosches.  This part of the defendants' Motion In Limine is denied.

### b.    Inflammatory rhetoric

Category (9) that the defendants seek to exclude is what they describe as "inflammatory rhetoric."  The only terms that they identify as "inflammatory," however are various conjugations of "drag."  The Gosches contend that there is sufficient factual basis in the record that KG was "dragged" and that the term is not necessarily so inflammatory that it should be barred.

I agree with the Gosches.  Again, there is sufficient factual basis in the record that KG was "dragged."  Nor can I conclude that the term "dragged" is necessarily so inflammatory as to invite the jurors to make a determination on an improper basis.  FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001; *Adams*, 401 F.3d at 900; *see also United States v. Miell*, No. CR 07-101-MWB, 2008 WL 5411692, *16 (N.D. Iowa Dec. 26,

2008) (considering whether "slum lord" had such an inflammatory effect). Consider, for example, "The fireman saved one man by dragging him from the burning shed."

This part of the defendants' Motion In Limine is denied.

### c. *Community safety/community standards*

Category (12) of the defendants' Motion In Limine seeks to exclude comments and testimony about what the defendants describe as "community safety/community standards."[3] The defendants contend that such questions are not relevant to any factual or legal issue in the case, but are, instead, intended to suggest to the jury that it is somehow responsible, through its verdict in this case, for protecting the students enrolled in the SBLC School District, and that such questions would improperly inflame and mislead the jury. The Gosches contend that this category of evidence is too vaguely identified to allow the court to determine the propriety of the line of questioning. They also argue that questions such as whether teachers should not cause physical injuries to students or whether it was foreseeable that dragging a student across a carpeted floor would cause an injury, are extremely relevant in establishing whether Ms. Riediger's actions were reasonable.

Contrary to the Gosches' contentions, the defendants have adequately specified the questions that they contend do nothing to establish what did or did not happen during the incident in question and are, by their nature, too inflammatory or misleading to allow. On the other hand, I find the defendants' contentions about the purpose of such questions

---

[3] The defendants specifically identify the Gosches' counsel's questions of witnesses during discovery about whether they agreed that teachers should not cause physical injuries to students; that it is foreseeable that dragging a student across a carpeted floor could cause rug burns; that the physical and mental welfare of a student is more important than a teacher's reputation; that the physical and mental welfare of a student is more important than a teacher's job; and that a teacher who causes a physical injury to a student should be held accountable and pay for all damages caused by her conduct.

to be speculative at best. Nevertheless, as to the merits, with one exception, the questions that the defendants have identified do nothing to establish what did or did not happen during the incident in question, so that they are excluded pursuant to Rule 401, and, consequently, constitute a waste of time, so that they are excluded pursuant to Rule 403. The one exception is a question about whether it was foreseeable that dragging a student across a carpeted floor would cause an injury. Unlike the other questions identified by the defendants, that question does go to the reasonableness of Ms. Riediger's conduct, and will be allowed.

The part of the defendants' Motion In Limine seeking exclusion of category (12) is granted, with the one exception identified, above.

### d. *Educational standards and related damage claims*

Category (13), the last category of evidence that the defendants seek to exclude, is evidence of educational standards and related damage claims. The defendants explain that the evidence in this category concerns testimony by the Gosches' experts about what KG's IEP states, that the IEP contains "appropriate measures" for managing KG's behavior, that the IEP does not suggest that "dragging" KG would be appropriate, that there were "specially designed instructions" and requirements of the IDEA, about the meaning of FAPE, that the content of KG's BIP and IEP, that KG's BIP did not call for physical restraint, that homebound instruction is inappropriate for KG, about the development of a BIP, and about recommendations for academic settings.

The defendants argue that, if, as the Gosches have argued and the court has held, the gravamen of the Gosches' claim is excessive force, and not a violation of the IDEA, then none of these opinions is relevant, and any damage claims that are tied to these opinions are equally irrelevant. The Gosches argue that this category is too vaguely identified to allow pretrial determination, but that testimony about KG's IEP and BIP is proper, because it goes to the reasonableness of the actions taken during the incident and

that testimony about the IDEA, FAPE, BIP, and IEP are relevant to the context in which the incident occurred.

As to evidence of educational standards, the defendants attempt to take my summary judgment ruling too far. I did not say anything to suggest that the IDEA, FAPE, KG's IEP, or KG's BIP are irrelevant to this case. Rather, I explained that the allegation that the use of force was contrary to the IEP and BIP was made as an indication of the *unreasonableness* of the use of force. *K.G.*, ___ F. Supp. 3d at ___, 2017 WL 1098829 at *12. I now clarify—if there were any doubt—that evidence that the use of force was contrary to the IEP and BIP is *admissible* to show the reasonableness or unreasonableness of the use of force. FED. R. EVID. 401. Similarly, testimony about the IDEA, FAPE, BIP and IEP is admissible to show the context in which the incident occurred. *Id.*

Nor do I find that this evidence should be excluded as substantially more prejudicial than probative. FED. R. EVID. 403. I note that the defendants do not specifically identify any testimony about damages purportedly based on violations of the IDEA, nor do the Gosches argue that such testimony would be admissible. Even so, I acknowledge that there is some potential for prejudice on the issue of damages, if jurors believe that they can award damages in this case for violations of the IDEA, FAPE, BIP, or IEP, standing alone. I find that this is an instance in which a limiting instruction on the proper uses of evidence about the IDEA, FAPE, BIP, and IEP will mitigate the potential prejudice from such evidence and allow it to be admitted. *See, e.g, Valadez,* 758 F.3d at 982 ("To the extent [the parties] were concerned about improper prejudice, a limiting instruction would have addressed those concerns." (citing FED. R. CIV. P. 105)). Specifically, it will likely be appropriate to instruct the jurors that, while they may hear (or have heard) evidence about the IDEA and FAPE and about KG's BIP and IEP, that evidence was (or will be) admitted only to help them understand the context of

the incident on which the Gosches' claims are based and to help them determine the reasonableness of the defendants' actions. The limiting instruction will likely explain, further, that the jurors cannot award any damages for any violation of the IDEA, FAPE, BIP, or IEP, even if they believe that such a violation has been proved, but can only award damages, if any, on a claim of unreasonable seizure, disability discrimination, or battery, if that claim and damages from the conduct at issue have been proved.

The part of the defendants' Motion In Limine seeking to exclude evidence in category (13) is denied.

## III.    CONCLUSION

Upon the foregoing,

1.    The plaintiffs' June 23, 2017, Motion In Limine (docket no. 49) is **granted in part and denied in part**, as follows:

    a.    The parts of the Gosches' Motion seeking exclusion of categories (1) through (4) are **granted** as unresisted, with the obvious caveat that the defendants may respond to previously undisclosed testimony by the Gosches' witnesses with undisclosed testimony of their own witnesses;

    b.    The part of the Gosches' Motion seeking exclusion of category (5), evidence of the county attorney's decision not to file criminal assault charges against Ms. Riediger in connection with the incident giving rise to the Gosches' claims, is **granted**, with the obvious caveat that, if the Gosches offer evidence that they sought to have Ms. Riediger prosecuted for assault, they will open the door to such evidence being offered by the defendants in response;

    c.    The part of the Gosches' Motion seeking exclusion of category (6), evidence of the IDOE findings and materials, is **granted** to the extent that documents from the administrative proceedings indicating the contentions of the

parties and any decision or determinations of the IDOE in the administrative proceedings are excluded, but documents from the administrative record, *for which authenticity and admissibility can be otherwise established*, are admissible.

    d.    The part of the Gosches' Motion seeking exclusion of category (7), evidence of two email communications between Dr. Bonnie Bunch and KG's parents, is **denied**, but any reference to the emails and the drafts of Dr. Bunch's letter to the school will be addressed with the procedure described above, in Section II.A.2.c.;

    e.    The part of the Gosches' Motion seeking exclusion of category (8), both as described by the Gosches and as described by the defendants, is **granted;**

    f.    The part of the Gosches' Motion seeking exclusion of category (9), evidence relating to drug use by KG's natural parents, is **granted**;

    g.    The part of the Gosches' Motion seeking exclusion of category (10), evidence regarding the expert opinions of Dr. Eli Chesen, is **granted in part and denied in part**, as set out above, in Section II.B.2.f.ii.;

2.    The defendants' June 30, 2017, Motion In Limine (docket no. 52) is **granted in part and denied in part**, as follows:

    a.    The parts of the defendants' Motion seeking exclusion of evidence in categories (1) through (6) are **granted** as unresisted;

    b.    The part of the defendants' Motion seeking exclusion of category (7), certain testimony by Dr. Huckabee, is **granted** to the extent described, above, in Section II.B.2.a.i.;

    c.    The part of the defendants' Motion seeking exclusion of category (8), certain testimony by Dr. Jung, **is granted in part and denied in part**, as described above, in Section II.B.2.a.ii.;

d. The part of the defendants' Motion seeking exclusion of category (9), concerning certain "inflammatory rhetoric," is **denied**;

e. The part of the defendants' Motion seeking exclusion of evidence in category (10) is **granted** as unresisted;

f. The part of the defendants' Motion seeking exclusion of category (11), certain testimony by Dr. Canter, is **denied**;

g. The part of the defendants' Motion seeking exclusion of evidence in category (12), comments and testimony about what the defendants describe as "community safety/community standards," is **granted**, with the one exception identified, above, in Section II.B.2.c.;

h. The part of the defendants' Motion seeking exclusion of evidence in category (13), evidence of educational standards and related damage claims, is **denied**.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 4th day of August, 2017.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA